

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:24-cr-168-JA-EJK
 18 U.S.C. § 1349

MA GRACIA CADET

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy to Commit Health Care Fraud)

#### A. Introduction

At all times material to this Information:

<u>The Conspirators and Their Enterprises</u>

1. MA GRACIA CADET, a resident of the Middle District of Florida, owned and controlled KGA Medical Supply LLC ("KGA Med") and Sapphire Medical Supply LLC ("Sapphire").

2. KGA Med was a purported durable medical equipment ("DME") supply company located in Osceola County, in the Middle District of Florida.

3. Sapphire was a purported DME supply company located in Orange County, in the Middle District of Florida.

<u>The Medicare Program</u>

4. The Medicare Program ("Medicare") was a federal health insurance program that provided medical benefits, items, and services to beneficiaries:

1

  a. aged 65 and older,

  b. under 65 with certain disabilities, and

  c. of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant).

5. The Centers for Medicare and Medicaid Services ("CMS") was an agency of the U.S. Department of Health and Human Services ("HHS"), and was the federal government body responsible for the administration of Medicare.

6. Medicare covered different types of benefits and was separated into different program parts. Medicare Part B covered, among other things, doctors' services, outpatient care, and certain medical equipment that were medically necessary.

DME Claims Submitted under Medicare Part B

7. DME was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

8. In order for Medicare to pay for DME, it must have been ordered by a physician or other eligible professional who, among other requirements, was enrolled in Medicare or validly opted-out of Medicare. 42 C.F.R. § 424.507(a)(iii).

9. For any DME item to be covered by Medicare, it must have been eligible for a defined Medicare benefit category, reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, and meet all other applicable Medicare statutory and regulatory requirements.

10. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws, rules, and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for medically necessary items and services rendered to beneficiaries. Providers were given access to Medicare manuals and service bulletins describing billing procedures, rules, and regulations.

11. Medicare reimbursed DME and other providers for medically necessary items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

12. A Medicare claim for DME reimbursement was required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

13. Medicare would pay a claim for the provision of DME only if the equipment was medically necessary, ordered by a licensed provider, and actually provided to the beneficiary as represented. Medicare claims were required to be

properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

## B. The Conspiracy

14. From in or around September 2022, and continuing through in or around February 2024, in the Middle District of Florida, and elsewhere, the defendant,

MA GRACIA CADET,

did knowingly and willfully combine, conspire, confederate, and agree with others to commit health care fraud, in violation of 18 U.S.C. § 1347.

## C. Purpose of the Conspiracy

15. It was a purpose of the conspiracy for MA GRACIA CADET and others to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in exchange for signed doctor's orders for braces; (b) submitting and causing the submission of false and fraudulent claims to Medicare for braces that were procured by the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented; (c) concealing and causing the concealment of kickbacks and bribes and false and fraudulent claims; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### D. Manner and Means of the Conspiracy

16. The manner and means by which the defendant and her conspirators sought to accomplish the purposes of the conspiracy included, among others, the following:

a. It was a part of the conspiracy that MA GRACIA CADET would and did own and control KGA Med and Sapphire.

b. It was further a part of the conspiracy that MA GRACIA CADET would and did certify to Medicare that she would comply with all Medicare rules and regulations, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that she would refrain from violating the Federal Anti-Kickback Statute.

c. It was further a part of the conspiracy that MA GRACIA CADET and others would and did obtain access to thousands of vulnerable Medicare beneficiaries' patient information from others, including telemarketers, who targeted them with advertising, inducing them to accept braces regardless of medical necessity.

d. It was further a part of the conspiracy that MA GRACIA CADET and others would and did offer and pay, and cause the offering and payment of, illegal kickbacks and bribes to overseas marketers, telemedicine companies, and others in exchange for arranging for medical providers to sign orders for DME regardless of medical necessity.

e.   It was further a part of the conspiracy that MA GRACIA CADET and others would and did conceal and disguise the nature and source of these kickbacks and bribes by generating and causing the generation of fraudulent invoices that falsely identified the payments as being made for Google advertisements, when, in reality, the payments were kickbacks and bribes for doctor's orders for braces.

f.   It was further a part of the conspiracy that MA GRACIA CADET and others would and did submit, and cause the submission of, false and fraudulent claims to Medicare for DME that was medically unnecessary, whose doctor's orders authorizing the DME were procured through the payments of illegal kickbacks and bribes, and that was ineligible for reimbursement by Medicare.

g.   It was further a part of the conspiracy that, from in or around September 2022, and continuing through in or around April 2023, MA GRACIA CADET and others, through KGA Med, submitted and caused to be submitted to Medicare approximately $3,937,154.38 in false and fraudulent claims for braces that were medically unnecessary, whose doctor's orders authorizing the DME were procured through the payment of illegal kickbacks and bribes, and that were ineligible for reimbursement by Medicare. Medicare paid approximately $1,053,286.59 on those false and fraudulent claims.

h.   It was further a part of the conspiracy that, from in or around January 2023, and continuing through in or around February 2024, MA GRACIA CADET and others, through Sapphire, submitted and caused to be submitted to

Medicare approximately $5,371,039.35 in false and fraudulent claims for braces that were medically unnecessary, whose doctor's orders authorizing the DME were procured through the payment of illegal kickbacks and bribes, and that were ineligible for reimbursement by Medicare. Medicare paid approximately $2,052,890.72 on those false and fraudulent claims.

i. It was further a part of the conspiracy that, from in or around September 2022, and continuing through in or around May 2023, MA GRACIA CADET would and did pay hundreds of thousands of dollars in illegal kickbacks and bribes in exchange for signed doctor's orders for braces.

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1. The allegations contained in Count One are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction for the violations alleged in Count One, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offenses.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of $3,106,177.31, which is the amount the defendant obtained as a result of the commission of the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

ROGER B. HANDBERG
United States Attorney

*/s/ Jessica A. Massey*
Jessica A. Massey
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

*/s/ Chauncey A. Bratt*
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division